DAVID C. HULL v. CHARLES E. CHAPEL and Others.

June 28, 1899.

Nos. 11,687, 11,688—(199, 203).

| 77 | 159 |
|----|-----|
| 81 | 516 |
| 81 | 518 |

| 77 | 159 |
|----|-----|
| 85 | 139 |

**Bond of Sheriff—Release of Sureties—Failure to Pay over Money.**

A sheriff having received, on redemption from a mortgage foreclosure sale, money belonging to the plaintiff, duly tendered payment thereof to plaintiff's agent, who had full authority to demand, receive, and receipt for the same, but the agent, without any just or lawful reason, refused to accept or receive the money. Subsequently the plaintiff demanded payment of the money from the sheriff, which he refused to make. In an action on the sheriff's official bond to recover the money, *held*, that the sureties were released from liability by the refusal of the plaintiff's agent to receive the money when tendered by the sheriff; that the subsequent refusal of the sheriff to pay the money on demand did not revive their liability, or constitute a new breach of the bond, which rendered them liable for the nonpayment of the same fund which had been previously tendered and refused.

**Same—Discretion of Court.**

*Held*, also, that upon the facts the court was not guilty of any abuse of

discretion in opening a default judgment, and granting the defendants leave to answer.

Action in the district court for Ramsey county to recover $1,548.50 on a sheriff's bond executed by defendant Chapel as principal and by the other defendants as sureties. Defendants Chapel and Merriam answered, and the issues arising under their answers were tried before Brill, J., who found in favor of plaintiff and against defendant Chapel, and in favor of defendant Merriam. From a judgment entered pursuant to the findings, and also against defendants Warner and Kittelson, who had failed to answer, plaintiff appealed. Subsequently a motion was made by defendants Warner and Kittelson to open the judgment and for leave to answer, and from an order, Kelly, J., granting said motion, plaintiff appealed. Judgment and order affirmed.

*John E. Stryker*, for appellant.

The sheriff received the redemption money by virtue of his office. In re Grundysen, 53 Minn. 346. The tender to plaintiff's attorney did not relieve the sheriff from his liability. Moulton v. Bowker, 115 Mass. 36. The attorney had no implied authority to release his client's cause of action or security, or the surety from the debt. Mandeville v. Reynolds, 68 N. Y. 528; Ritch v. Smith, 82 N. Y. 627; Story, Ag. § 99; Mechem, Ag. §§ 813, 819; Cram v. Sickel, 51 Neb. 828; Armstrong v. Hurst, 39 So. C. 498; Davis v. Severance, 49 Minn. 528. One dealing with an attorney is bound to take notice of the scope of his authority. Cox v. New York, 63 N. Y. 414, 419. The attorney was also acting for a second mortgagee, and could not bind his client when so acting against his interest. German Ins. Co. v. Independent School Dist. of Milford, 80 Fed. 366; Mechem, Ag. §§ 66, 67.

Tender, to be effectual, must be kept good. Dunn v. Hunt, 63 Minn. 484. Tender is not payment, but only releases mortgage security or discharges a party secondarily liable. The liability of a surety on an official bond is a debt. Bay v. Cook, 31 Ill. 336, 348. It is direct and not collateral. Cassady v. Trustees, 105 Ill. 560. To discharge a surety, there must be an agreement by which the right of the injured party to enforce fulfilment of the contract is

suspended. Reynolds v. Ward, 5 Wend. 501; King v. Baldwin, 2 Johns. Ch. 554, 559. Delay does not discharge. Fulton v. Matthews, 15 Johns. 433; Andrus v. Bealls, 9 Cow. 693; Warner v. Beardsley, 8 Wend. 194. Each demand without payment resulted in a new default. See Six Carpenters Case, 8 Coke, 432. The rule that tender deprives a creditor of his security is a hard one at best, nor are the authorities agreed. Moore v. Norman, 43 Minn. 428; Dunn v. Hunt, supra. The burden is on him who relies on a tender not kept good to show that all conditions have been complied with. Union Mut. L. Ins. Co. v. Union Mills P. Co., 37 Fed. 286; Post v. Springsted, 49 Mich. 90; Waldron v. Murphy, 40 Mich. 668; Renard v. Clink, 91 Mich. 1.

Laws 1895, c. 329, providing that a bailee may relieve himself from liability by deposit in court, applies to this case. The word "may" should be construed "must." Fowler v. Pirkins, 77 Ill. 271; Seiple v. Mayor, 27 N. J. L. 407. When noncompliance with such a statute can work injury to anyone affected by it, the requirement cannot be dispensed with. Koch v. Bridges, 45 Miss. 247. Omission by a public official to perform an act prescribed by a directory statute renders him liable to anyone injured by his failure. Brown v. Lester, 21 Miss. 392; French v. Edwards, 13 Wall. 506, 511. The tender proved did not release the sureties. State v. Alden, 12 Ohio, 59.

Defendants Warner and Kittelson were not entitled to have the judgment opened. The negligence of the agent or attorney was no excuse. Waddell v. Wood, 64 N. C. 624; Stewart v. Cannon, 66 Minn. 64; 1 Black, Judg. § 341; Norwood v. King, 86 N. C. 80; Moore v. Horner, 146 Ind. 287. The court will not encourage carelessness. Noye M. Co. v. Wheaton R. M. Co., 60 Minn. 117; Mueller v. McCulloch, 59 Minn. 409; Glaeser v. City of St. Paul, 67 Minn. 368. The defense of the defaulting defendants is not meritorious.

*John F. Fitzpatrick* and *Walter L. Chapin,* for respondents.

Tender by a principal to his creditor releases the sureties. Johnson v. Mills, 10 Cush. 503; M'Questen v. Noyes, 6 N. H. 19; Sears v. Van Dusen, 25 Mich. 351; Joslyn v. Eastman, 46 Vt. 258; Curiac v. Packard, 29 Cal. 104; Spurgeon v. Smitha, 114 Ind. 453;

77 M.—11

Fisher v. Stockebrand, 26 Kan. 565; Life v. Neville, 72 Ala. 517; Sharp v. Miller, 57 Cal. 415; Johnson v. Ivey, 44 Tenn. 608; Smith v. Old Dominion, 119 N. C. 257. See also Moore v. Norman, 43 Minn. 428. The tender to the agent was tender to the principal. Fisher v. Stockebrand, supra. It was not necessary for the tender to be kept good. Johnson v. Ivey, supra; Smith v. Old Dominion, supra; Moore v. Norman, supra. The rule releasing sureties applies to sureties on bonds. Johnson v. Mills, supra; Sharp v. Miller, supra. The case of State v. Alden, 12 Ohio, 59, relied on by plaintiff, stands alone.

The application to remove the default was addressed to the discretion of the court. St. Mary's Hospital v. National Ben. Co., 60 Minn. 61. See Martin v. Curley, 70 Minn. 489.

MITCHELL, J.

The defendant Chapel having been elected sheriff of Ramsey county, he, as principal, and the other defendants, as sureties, executed an official bond, conditioned that Chapel should well and faithfully in all things perform and execute the duties of sheriff according to law during his continuance in office. This is an action on the bond to recover the sum of $1,548.50 belonging to the plaintiff, which was received by Chapel as sheriff upon the redemption from a mortgage sale at which the plaintiff was purchaser, and which it is alleged Chapel has failed and refused to pay over to the plaintiff, although repeatedly requested so to do. There are two appeals,—one from a judgment dismissing the action as to the defendant Merriam, and the other from an order opening the default of the defendants Warner and Kittelson to answer.

1. The facts material to the appeal from the judgment are as follows: Promptly after Chapel received the money, and in December, 1895, he duly and unconditionally tendered payment of the same to plaintiff's agent, who had full authority to demand, receive, and receipt for the same in his behalf, but such agent, without any just or lawful reason, then and there refused to accept or receive the money. Subsequently, on three different occasions, viz. July, 1896, December, 1896, and June, 1897, the plaintiff duly demanded payment of the money from Chapel, which on each of these occasions

he refused to make. The sole question is whether, upon these facts, the sureties were released.

The rule is well settled that if the principal, after the debt is due, duly tenders payment, and the creditor refuses to receive it, the surety is discharged. One of the reasons sometimes assigned for this rule is that the transaction amounts to a payment of the debt, and a new loan to the principal. But doubtless the main reason for the rule is that the contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction, and any bad faith on part of the creditor will discharge the surety. The refusal of the creditor to receive the money is a fraud on the surety, which exposes him to greater risk. After the debt is due and payable, the creditor cannot, by his unjustifiable refusal to accept payment from the principal, compel the surety to continue responsible for the future acts of the principal as his debtor or bailee of his money. If it were otherwise, the creditor would have it in his power to keep the surety liable indefinitely. At least as to private debts and unofficial bonds, it cannot be necessary to cite authorities on the proposition. In such case it is not necessary, in order to release the surety, that the principal should keep the tender good. It is the refusal of the tender which works the release. Neither is it material that the tender was made to and refused by the duly-authorized agent of the creditor, instead of the creditor in person. Having made the agent his alter ego, pro hac vice the creditor is bound and affected by the agent's acts in that regard the same as if they were his own personal acts. Neither does the mere fact that the liability of the surety is upon a bond constituting a continuing guaranty of the fidelity of the principal alter the rule, although, of course, in such a case, conduct on part of the creditor which will release the surety from one breach of the bond by the principal will not release him from liability for subsequent and independent breaches. Therefore, if the sureties in this case are not released as to the claim of the plaintiff, it must be because of some distinction or difference between the liability of sureties for a private debt or on an unofficial bond and their liability on an official bond.

A sheriff's bond has a dual character, or, more properly speak-

ing, it is designed to secure the performance of two classes of official duties, viz. those due the public as such and those due private persons for whom he is called on to perform official work. While the bond runs to the state as the nominal obligee, yet the real obligees or beneficiaries are not only the state or county, but also any person for whom the sheriff is called upon to perform an official duty. If this action was brought by the state or county to recover on the bond for a breach of it with reference to some duty which the sheriff owed the public in its organized capacity, and the refusal of the tender had been by some other public officer, a very different principle would be involved. But the breach here complained of was of a duty owing to a private individual, and one in which no one but he had any interest. As respects such a liability, we fail to see why the same acts on the part of the creditor which would release a surety on a private bond should not also release a surety on a sheriff's official bond.

The contention of the plaintiff is, in substance, that the bond was a continuing guaranty of the official conduct of the sheriff; that the refusal of the sheriff on demand, subsequent to the tender, to pay over the money, was a new breach of the conditions of the bond, for which the sureties are liable. But it seems to us that this overlooks the fact that the duty which the plaintiff demanded the sheriff to perform was the same one of which the sheriff had previously tendered performance, and which the plaintiff had, in violation of the rights of the sureties, refused to accept; and that, if he had accepted it, as he ought, the debt would have been paid, and no subsequent default of the sheriff as to that debt could ever have occurred. The violation of the rights of the sureties consisted of the refusal of the tender, and, if that released them, it is impossible to see how a subsequent change of mind and demand on part of the plaintiff could revive their liability as to that debt, or undo the harm done by the prior refusal of the tender.

The only case cited by plaintiff's counsel which tends to support his contention is State v. Alden, 12 Ohio, 59, in which it was held that, where a sheriff absconds with money in his possession, collected on execution, having previously made a tender to the party entitled, who refused to receive it, such tender and refusal is no de-

fense to the sheriff's sureties in a suit upon his official bond. The opinion in that case is very brief, and no authorities are cited. The line of reasoning adopted was as follows:

"The principle of discharge, arising from an act done by the creditor, prejudicial to the surety, does not apply. An ordinary suretyship is a mere contingent obligation, for the payment of money, in default of the principal. The securities upon an official bond guaranty the faithful performance of official duty. The payment of money, and other acts done by the creditor, injurious to the surety, may discharge the one, but the faithful and honest performance of official duty alone can fulfil the condition of the other. The fact of tender and refusal does not convert the official trust into a mere private liability for a money demand. The obligation to pay over money received by a sheriff in his official capacity, continues an official duty until performed by payment to the party entitled. As long, then, as the obligation to pay continues an official duty, so long were the securities responsible for its violation, upon their bond."

We confess our inability to understand this line of reasoning, unless it means that no acts or conduct on part of a creditor or other private party interested in the official conduct of a sheriff will release the sureties on his bond until and unless the sheriff has fully performed his whole duty in that regard by paying the money to the party entitled to it,—a proposition which we think will be found to be without support in any other adjudicated case.

2. The defendants Warner and Kittelson having failed to answer within the time allowed by law, judgment was entered against them on default October 7, 1898. Subsequently, on their motion, the court made an order opening the judgment, and allowing them to answer. The only question on the appeal from this order is whether, in making it, the court abused its discretion.

The motion was heard on affidavits and counter affidavits, which reasonably tended to show the following state of facts: Within two or three days after the service of the summons upon them in May, 1898, these two defendants had an interview with their principal, Chapel, in regard to the action, in which he, in substance, told them that they need not give it any attention, and promised them that he would attend to it for them, and have his attorney interpose an answer for them, and that, relying on this promise,

they omitted to serve any answer in their own behalf, and that they never knew that any judgment had been entered against them until in December, 1898. Their affidavits to the above effect were accompanied by their proposed answer, and were corroborated by that of Chapel, who also swore that he did instruct his attorney to serve an answer in the action for Warner and Kittelson similar to the one served for himself and Merriam. This attorney, having enlisted in the military service of the United States, retired from the case in the late spring or early summer of 1898, whereupon Chapel and Merriam employed their present counsel. It appears from the counter affidavits interposed in behalf of the plaintiff that Chapel had notice that no answer had been served in behalf of Warner and Kittelson at the time of the trial of the issues between the plaintiff and himself and Merriam on the last day of June or the first day of July. Very shortly after learning that judgment had been entered against them, and some time early in December, Warner and Kittelson employed counsel to apply to have the judgment opened, and to obtain leave to answer. The preparation of the motion papers was somewhat delayed by sickness of counsel and the absence of Chapel from the city, but notice of a motion to be heard January 7, 1899, was served during the last days of December, 1898.

We cannot see that these defendants were guilty of any personal negligence, unless it was in trusting to their principal to attend to the matter for them. But this is the most natural thing in the world for sureties to do, as their principal owes them at least the moral duty to do so, and is ordinarily the only one conversant with the facts. Chapel was doubtless guilty of negligence and great disregard for the interests of his own sureties in failing to take steps to relieve them from the default after he ascertained at the trial of the action that his original attorney had failed to interpose an answer in their behalf; but this does not militate so strongly against the defendants as if it had been their own personal negligence. It appears from the whole case, as well as from their answer, that they have a good defense which is meritorious, and not merely technical, as suggested by plaintiff's counsel. It was a somewhat broad stretch of judicial discretion to relieve them from

their default, but, under all the circumstances, we do not think we would be warranted in holding that it amounted to an abuse of discretion.

Judgment and order affirmed.